(No. 92-CC-2601—

FICEK ELECTRIC & COMMUNICATION SYSTEMS, Claimant, v. THE STATE OF ILLINOIS, Respondent.

*Opinion filed September 1, 1992.*

JOHN BALESTRI, for Claimant.

ROLAND W. BURRIS, Attorney General (CYNTHIA WOOD, Assistant Attorney General, of counsel), for Respondent.

OPINION

MONTANA, C.J.

Claimant Ficek Electric and Communication Systems (Ficek) brought this claim seeking payment of $13,225.70 for service, material, and interest pursuant to a contract with the Respondent's Department of Central Management Services (CMS) to relocate a telephone system. In its standard lapsed appropriation form complaint, Ficek alleged that it made demand for payment but its demand was refused on the grounds that the funds appropriated for such payments had lapsed. The Respondent filed a stipulation agreeing to our making an award in the full amount sought. The stipulation is now before us for approval.

This Court is not bound by such stipulations and it cannot acquiesce in approving *in toto* the one at bar insofar as it would have us make an award for interest.

The facts, as they relate to the interest issue, are found to be as follows. The contract giving rise to this claim was entered into on June 28, 1991, the last business day of the State's fiscal year. Payment was not due until the work was performed or the invoice was received, whichever occurred later. The departmental report which was compiled by CMS and offered as *prima facie* evidence of the facts contained therein in support of the stipulation, pursuant to 74 Ill. Adm. Code 790.14, states at paragraph 8 that the work was completed sometime in August of 1991. The invoice attached to Ficek's complaint

bears a date of August 28, 1991. Also attached to Ficek's complaint was a separate invoice for an interest penalty. On that invoice interest was sought at the rate of 2% per month, compounded monthly, for the period of December 1, 1991, through the end of March 1992.

Although not specifically stated in the complaint, stipulation, or departmental report, it appears from the percentage rate of interest charged that the interest is claimed pursuant to the State Prompt Payment Act (Ill. Rev. Stat., ch. 127, par. 132.401 *et seq.*), hereinafter referred to as the Act. Section 3—1 of the Act was amended effective January 1, 1988, so as to provide that

"The Court of Claims shall, in its investigation of payments due claimants, provide for interest penalties as prescribed in this Act."

The procedures set forth in the Act as to how the interest penalty is triggered are complicated and are particularly directed at agencies entering into purchase agreements. The statutory scheme is not easily transferred to the procedures of litigation in the Court of Claims. No specific guidance was provided in the 1988 amendment to the Act as to when interest is to begin to accrue or stop on claims in this Court. Therefore, the Court will interpret the amendment strictly. The Court will provide for interest in its awards to the extent that the Act would require the respondent agencies to pay interest. The issue in each case, therefore, is whether and to what extent the agency may pay the interest.

In general, the Act provides a time period within which a bill must be paid or disapproved by the purchasing agency and if not paid or disapproved within that period, the interest penalty is potentially triggered. In the case at bar, the record shows that such period started no earlier than August 28, 1991, the date of the invoice for the principal. The bill was payable from the Communica-

tions Revolving Fund, appropriation line item No. 312-41655-1700-0000, as shown in paragraph 8 of the CMS report. The earliest date that the interest penalty could be triggered would be 45 days after August 28, 1991, pursuant to section 3 of the Act. This point in time would be beyond the ability of CMS to make the payment. The Act at section 3—1 requires that interest shall be paid by separate warrant from the same appropriation line item as that from which the principal is paid. CMS' authority to expend from that line item appropriation expired on September 30, 1991, less than 45 days from August 28, 1991. (Ill. Rev. Stat., ch. 127, par. 161.) Because CMS could not have been required to pay interest on the bill under the terms of the Act, this Court will not make such an award.

To hold otherwise would potentially enable nearly any provider of goods or services to the State to simply wait until the statute of limitations (which on contracts in the Court of Claims is five years) was about to run while interest was accruing at 24% per annum before filing the claim here and then obtain an exorbitant windfall. While not an extreme case, the Ficek claim is illustrative of the potential. Ficek claims interest accruing from December 1, 1991, and did not file its claim until the end of March, 1992. There was no way payment could have been made during that time and the interest it would have the State pay would amount to approximately $1,000.

Moreover, the principal is payable from the Communications Revolving Fund. The Court of Claims does not have access to such money and could pay neither awards of principal nor interest as required by section 3—1 of the Act until such later time as money from that fund is appropriated to fund such awards in what is known as the Court of Claims special awards bill.

The clear purpose of the Act is to provide for prompt payment by the State's agencies. That purpose will not be furthered by providing awards of interest after the ability to make the payment no longer exists and we do not read anything in the Act to require otherwise.

Accordingly, it is hereby ordered that the Claimant be, and hereby is, awarded the sum of $12,218.53, and no interest, in full and final satisfaction of this claim.